## EIGHT HOUR STATUTE NOT APPLICABLE TO PROPRIETARY FUNCTIONS OF A MUNICIPALITY.

Common Pleas Court of Portage County.

THE STATE OF OHIO v. W. F. PETERS.

Decided, May, 1924.

*Prosecution of a Municipal Officer for Violation of the Eight Hour Statute—Said Statute is in Derrogation of a Common Law Right— And in Conflict with the Federal Constitution—Is Applicable only to Governmental Functions of a Municipality—Duplicity—Section 17-1.*

1. A court will take judicial notice of the fact that there is in this state a municipal corporation called Akron, containing more than five thousand population.

2. In the prosecution of a director of public service of a municipality for requiring and permitting a workman to labor more than forty-eight hours in one calendar week, no extraordinary emergency so requiring, the indictment is not open to the charge of diplicity in that it alleges the work was "carried on" and "aided" by the municipality. The word "aided" as thus used is without significance and entirely superfluous.

3. But the allegation that the defendant "required" and "permitted" more than forty-eight hours labor in a single calendar week constitutes duplicity, inasmuch as there are two separate offenses named and evidence which would establish one of them would not prove the other.

4. The operation by a municipality of a waterworks plant is a proprietary function, and is not subject to the statutory limitation as to the number of hours which shall constitute a day's work or a week's work.

*Hon. C. C. Crabbe,* Atty. Gen.; *A. L. Heisler,* Prosecuting Atty; *Arthur H. Weicks,* Special Council; attorneys for plaintiff.

*H. M. Hagelbarger,* attorney for defendant.

A. S. COLE, J.

The grand jury of this county at the October term, 1923 returned an indictment against the defendant, W. F. Peters, which, omitting the formal parts, is as follows:

"That the said W. F. Peters, late of said county, on the 27th day of May, in the year of our Lord one thousand nine hundred and twenty-three, at the county of Portage aforesaid, on or about the 27th day of May, 1923, and for one week thereafter in the township of Franklin, county of Portage, state of Ohio, he then being the director of public service of the city of Akron, Ohio, and being then and there a person whose duty it then and there was to employ, direct and control the services of workmen engaged in a certain public work, carried on and aided by the city of Akron, Ohio, to-wit: the water works plant of the city of Akron, said plant being located in Franklin township, county of Portage, Ohio, did unlawfully require and permit a workman, to-wit: one R. B. Hubler to labor on said public work, carried on and aided by the city of Akron, to-wit: the water works plant of said city, located in Franklin township, Portage county, for and during a period of more than forty-eight (48) hours in one calendar week, to-wit: more than forty-eight hours in said week beginning Sunday, May 27th, 1923, there being at said time and place no extraordinary emergency, making lawful the labor of said R. B. Hubler, for, and during a period of said week beginning May 27th, 1923, of more than forty-eight hours."

To this indictment the defendant filed a general demurrer to the effect that the facts stated do not constitute an offense punishable by law of Ohio.

The first contention argued by the defendant is a claim of duplicity that the indictment avers that the work was carried on and aided by the city of Akron, and that the charge should be that the work was carried on by the city of Akron if it was being prosecuted alone by the city, or that it was being aided by the city if that was the situation. The work described in the indictment was employment in the water works plant of the city of Akron. The city has power to establish and operate or carry on a water works plant to supply it and its inhabitants with water; but it has no power or authority to aid any other person or municipality in rendering that service. It is not like state aid for highways or schools, but is wholly the affair of the city. The city could not render aid in the sense of assisting some one else in the enterprise. The only thing the city could do was to carry on the enterprise. This

being so, the word "aid" has no place in the indictment, unless it is used in the sense that the city aided in carrying on its own water works plant. The word "aid" therefore becomes wholly un-important in the indictment. As to that contention the demurrer is overruled.

It is next claimed that because the indictment recites that the workman was "required" and "permitted" to render services more than forty-eight hours during the week mentioned would constitute duplicity; that the defendant should not have been charged with both "requiring" and "permitting" but only with "requiring" if that was the fact or "permitting" if that was the claim.

In determining whether an indictment is open to the objection of duplicity it is said the real test is this: Would the same evidence necessarily establish that the workman was required to render the services as to establish that he was permitted to do so? If so the demurrer should be overruled.

To "require" an act to be done raises in the mind some order or other direction to do it. It is a positive act. To "permit" an act to be done raises in the mind no positive order or direction, but only a failure to attempt to prevent the act from being done. One requires a positive order to do a certain thing, the other at least requires an attempt to prevent the same thing from being done. Now proof of an order to do a certain thing might be evidence that no attempt was made to prevent the thing from being done; but proof that no attempt was made to prevent a thing from being done would be no evidence of a requirement or a direction that the thing be done. So that if the claim of the state is that the defendant permitted the thing to be done it would need very different evidence to sustain it than it would to sustain the claim that the act was required to be done.

The answer of the prosecution to this claim is that the indictment follows the words of the statute. This is usually sufficient, because most statutes provided for only one offense; but Section 17-1 General Code, under which this indictment is drawn provides for two separate offenses. It is made an

offense to "require" a workman to labor more than forty-eight hours a week. Another offense is to "permit" an employee to work more than forty-eight hours a week. The evidence necessary to establish one offense might be wholly incompetent to establish the other. That being true, it follows that the indictment is open to the objection of duplicity as claimed by the defendant, and on that ground the demurrer is sustained.

A third claim is to the effect that the indictment does not in words aver that the city of Akron is a municipal corporation of the state in describing the political subdivision for and on whose account the services of the workman were rendered. The description in the indictment is set out as follows:

"The defendant being director of public service of the city of Akron, Ohio."

Our statute provides that a municipal corporation having a population of five thousand or more, according to the census returns as certified by the Secretary of State, shall constitute a city. There is a municipal corporation in the state called Akron coming within this classification, and courts will take judicial notice of that fact. To be a city it must be a municipal corporation with the prescribed population. It must be remembered that the city itself is not charged with anything in this indictment. The words used are merely descriptive of the political sub-division and for that purpose are sufficient. As to this claim of the defendant the demurrer is overruled.

The fourth and last contention argued by the defendant raises a very interesting question. It is a claim that in the operation of a water works plant by the city, the plant being already constructed and in process of operation, that this statute and the constitutional provisions of the state is probably in conflict with section 1 of the 14th Amendment to the Federal Constitution because it deprives a workman of property without due process of law, and that in any event the services rendered by the workman in such a water works plant is not a public work within the meaning and intention of the state constitution and statute.

Labor is property, and it may be and often is the only commodity that the workman has to sell. General laws attempting to control the hours of labor, and the right of a workman to contract for as many hours service as he sees fit to render have been held to be in violation of this provision of the Federal constitution. However, where such provisions as to the hours of labor are limited by the state to its own employees and the employees of the political sub-divisions of the state engaged in purely governmental enterprises, such laws have been upheld on the ground that the state or political sub-division, being one of the contracting parties may provide in the contracts with its employees any reasonable limitation on the hours of service that it sees fit. And such statutes are said to be in the nature of a direction from a principal to his agent that the limitation thus provided for shall be a compliance with the contract known to and accepted by the employee.

Political sub-divisions of the state known as municipal corporations are charged with certain purely governmental duties which they alone can perform, and which can not be delegated to or performed by any other agency. There are other proprietary powers given to them which they may or may not execute just as they see fit, and are of such a character that their performance could as well be accomplished by private individuals or corporations as by the municipality.

When a municipal corporation employs workmen in the discharge of its purely governmental duties then legislation limiting the hours of service of employees engaged on any public work carried on or aided by the state or any political sub-division thereof would not be open to objection. But would it necessarily follow that when the municipal corporation enters a field of endeavor which may be accomplished by a private enterprise, like the operation of a water works plant, a lighting plant, a street car system, or other purely proprietary function as distinguished from a governmental one that such restriction as to hours of service would be equally free from objection?

In other words do such enterprises when carried on by a municipal corporation become public work?

It must be remembered that such legislation is in derroga-

tion of a common law right; that it is of a criminal nature and imposes a punishment for its violation, and that it is open to a serious constitutional question as to whether it is in conflict with the first section of the fourteenth amendment of the Federal Constitution. Because of these things the statute must be strictly construed by the courts.

In the recent case of *Travellers Insurance Company* v. *Village of Wadsworth,* decided March 4, 1924, and found in Volume 109 O. S., at page 440, the second paragraph of the syllabus is as follows:

"The power to establish, maintain and operate a municipal lighting and power plant, under the constitution and statutes, is a proprietary power, and in the absence of a specific prohibition, the city acting in a proprietary capacity may exercise its powers as would an individual or private corporation."

These powers then are exercised as they would be by a private person; but if they shall be exercised by a private person they would be wholly without the provisions of our state constitution and statute regarding hours of service, and the workmen would not be engaged on public work, but on or in a private work with the public receiving the benefit of the work.

This situation, according to the authority cited is true only in those cases where there is an absence of a specific prohibition. Now do the provisions of our state constitution and statute under consideration, when strictly construed as they must be necessarily amount to a specific prohibition when applied to the operation of a purely proprietary function of a city.

In the case of *Commonwealth* v. *Cronan,* decided by the Supreme Court of Massachusetts, March 1st, 1915, and reported in 107 N. E. Reporter 925, the 6th paragraph of the syllabus is as follows:

"Where a city owns and operates its water plant as a private commercial venture the property is held in its strictly proprietary capacity, and its contracts in relation thereto are probably protected by the constitutional provisions for the protection of contracts of individuals, and it will not be presumed, in the absence of plain language requiring it, that the Legislature intended subsequent eight hour acts to apply to existing contracts with employees of the water works."

This case also is authority in support of the proposition that in the exercise of these proprietary functions cities act as private individuals and that restrictive legislation as to hours of service have no application in the absence of plain language requiring it.

The constitutional provision of Section 37, Article 2 under investigation is as follows:

"Except in cases of extraordinary emergency not to exceed eight hours shall constitute a days work and not to exceed forty eight hours a week's work, for workmen engaged on any public work carried on and aided by the state or any political subdivision thereof, whether done by contract or otherwise."

The Statute 17-1 General Code, is in the same language as the constitutional amendment, except that it adds a penalty for its violation.

The authorities cited are to the effect that in the operation of a waterworks plant by the city it acts as an individual would act rendering the same services. That is, that the service is not necessarily a public service or a public work carried on and aided by the state or a political subdivision thereof, but is in the nature of a private work carried on by the agency of the municipal corporation.

It might be further observed that if the framers of our constitutional amendment and the Legislature in drafting the statute had intended that these provisions should be construed so as to relate to the hours of labor performed in these proprietary matters, the form of expression used would have been such that it would have specially declared that intent; especially in view of the situation heretofore alluded to that these provisions are in derrogation of a common law right, are criminal in their nature and present a very serious question as to whether they are not in conflict with the Federal Constitution. Not having done so it may be presumed that they were intended to be purely governmental matters only.

This being true the constitutional and statutory provisions restricting the hours of work have no application to situations of this kind and for that reason the demurrer to the indictment as to this last contention is sustained.